26 C.C.P.A. (Patents)

## WALSH et al. v. DAVIDSON et al.

## DAVIDSON v. WALSH et al. (two cases).

Patent Appeals Nos. 4028, 4030, 4031.

Court of Customs and Patent Appeals.
Jan. 23, 1939.

I. Seltzer and C. W. Levinson, both of New York City, for Walsh and Caprio.

Eugene L. Greenewald and Emory P. Boynton, both of New York City (Rudolph S. Nelson, of New York City, of counsel), for Davidson.

Warren J. Willis, of New York City, for Ostromislensky.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

HATFIELD, Associate Judge.

These are appeals in interference proceedings from the decisions of the Board of Appeals of the United States Patent Office affirming the decisions of the Examiner of Interferences awarding priority of invention to appellee Iwan Ostromislensky in interference No. 65,251, and to appellees James F. Walsh and Amerigo F. Caprio in interference No. 63,781.

Interference No. 65,251 involves three parties. The two unsuccessful parties in the Patent Office (James F. Walsh and Amerigo F. Caprio, in appeal No. 4028, and Joseph G. Davidson, in appeal No. 4031) have appealed to this court.

Interference No. 63,781, appeal No. 4030, is a two party interference in which Joseph G. Davidson is appellant and James F. Walsh and 'Amerigo F. Caprio are appellees.

Considerable evidence was introduced in interference No. 65,251 by the parties Walsh and Caprio, and the party Davidson (Ostromislensky submitted no evidence, and is restricted to his filing date for conception 'and constructive reduction to practice), which, by stipulation by counsel for the parties, was made a part of the record in interference No. 63,781. Inasmuch as that evidence is relied upon by appellants in interference No. 65,251, appeals Nos. 4028 and 4031, and by both parties in interference No. 63,781, appeal No. 4030, we shall dispose of the issues in one opinion.

For the purpose of the hearing in this court, the records in the interferences were consolidated.

### Appeals Nos. 4028 and 4031.

Interference No. 65,251 is between appellee Ostromislensky's application No. 244,258, filed January 3, 1928, and Walsh and Caprio's patent, No. 1,835,619, issued December 8, 1931 on an application, No. 264,273, filed March 23, 1928, and the application of Davidson, serial No. 593,696, filed February 17, 1932, which is a division of application No. 296,106, filed July 28, 1928, and which matured into patent No. 1,929,352 on October 3, 1933.

Ostromislensky is the senior party, and the burden was upon the junior parties to establish priority of invention by a preponderance of the evidence.

The counts in issue are three in number and originated in Walsh and Caprio's patent.

The invention relates to the method of uniting articles, particularly sheets of glass, by interposing a vinyl compound between the surfaces of such articles, subjecting the same to pressure, and polymerizing the vinyl compound in situ.

The counts read:

"Count 1. Method of uniting articles comprising applying a layer of material containing a vinyl compound between the surfaces thereof, subjecting the same to pressure and polymerizing said vinyl compound in situ.

"Count 2. Method of uniting articles comprising applying a layer of a material containing a partially polymerized vinyl compound between the surfaces thereof, subjecting the same to pressure and further polymerizing said vinyl compound in situ.

"Count 3. Method of uniting articles of glass comprising applying a layer of a material containing a vinyl compound between the surfaces thereof, subjecting the same to pressure and polymerizing said vinyl compound in situ."

It will be observed that in count 1 a vinyl compound is interposed between the surfaces of articles, the articles are then subjected to pressure and the vinyl compound is polymerized in situ; whereas, in count 2 a partially polymerized vinyl compound is interposed between the surfaces of articles, the articles are subjected to pressure and the partially polymerized vinyl compound is further polymerized in situ. Count 3 is similar to count 1, except that it is limited to articles of glass.

In appeal No. 4028 the first question for our consideration is whether appellee Ostromislensky is entitled to make the claims constituting the counts in issue.

The tribunals of the Patent Office concurred in holding that, although there is no express statement in Ostromislensky's application that the vinyl compound is polymerized in situ, such polymerization is inherent in example 2 of his application, and that, therefore, he is entitled to make the claims.

Example 2 is as follows: "The surface of a sheet of mineral glass, as described in example 1, is covered with a coating of chemically pure styrol ($C_6H_5CH: CH_2$); styrol which has partially polymerized to polystyrol may be used. Thereupon the second sheet of glass is laid upon it under certain pressure. The resulting article is then kept at room temperature or else heated to 60-100-170° C., depending upon the stability of the mineral glass used in each instance, until the glass becomes optically homogeneous and very durable."

It will be observed that appellee states in his application that either chemically pure styrol or partially polymerized styrol (polystyrol) may be used. One or the other of those substances is interposed between the surfaces of articles, particularly glass articles, the articles are then subjected to pressure and are kept at room temperature or heated to 60-100-170° C.

It appears from the record that the last step in the involved invention—the polymerizing of the vinyl compound in situ—may be accomplished either by exposing the articles to light or by subjecting them to heat. It would seem to be clear, therefore, that the polymerization of the vinyl compound is inherent in appellee's disclosure.

But, it is argued by counsel for appellants Walsh and Caprio that the counts in issue relate broadly to the use of vinyl compounds; that in appellee's application but one of the vinyl compounds is disclosed; that he is not entitled to claims in a patent which cover the entire group of such compounds; and that, therefore, he is not entitled to make the claims constituting the counts in issue.

Each of the counts in issue relates to a method of uniting articles by interposing *a* vinyl compound between the surfaces of such articles. Appellee clearly discloses the use of *a* vinyl compound for such purpose. Obviously then, he is entitled in an interference proceeding to make counts which are sufficiently broad to include the vinyl compound which he discloses. Blodgett and Hanson v. Richter, 79 F.2d 922, 23 C.C.P.A., Patents, 749.

If appellee is the prior inventor of the use of one of the vinyl compounds in the involved method of uniting articles, certainly appellants Walsh and Caprio are not entitled to a patent for the use of all vinyl compounds. Furthermore, it is so well settled as to require no citation of authority that the question of the right of a party to secure a patent can not be raised in this court in an interference proceeding. In interference proceedings the jurisdiction of this court is limited to the question of priority of invention and to such ancillary questions as may be involved therein. Should appellee receive an award of priority of invention, his right to receive a patent will be determined in an ex parte prosecution of his application.

It is argued by counsel for appellants Walsh and Caprio that it has been established by the testimony of the witness Caprio that if chemically pure styrol is "placed between the glass and the assembly subjected to pressure the styrol would squeeze out with the result that practically no layer is left between the two sheets of glass with the consequence that no adhesion could take place between the sheets of glass. Furthermore, if any trace of un-

polymerized styrol should be left between the sheets of glass, it would not polymerize at the room temperature specified in Example 2 of Ostromislensky, and even when heated to 60-100-170°C., any trace of pure styrol that may have been left between the glass surfaces would be expelled by evaporation."

It appears from the testimony of the witness Caprio that he had never had any experience in the polymerization of styrol, and that his testimony was not based upon any experiments carried out for the purpose of ascertaining the facts concerning which he testified. His testimony, therefore, amounts to nothing more than the opinion of an adverse party, and is wholly insufficient to warrant a holding consistent with the views advanced here by counsel for appellants. Accordingly, we conclude that appellee is entitled to make the claims constituting the counts in issue.

Considerable evidence was introduced by appellants Walsh and Caprio for the purpose of establishing that they conceived the invention and disclosed it to others sometime between January 15, and July 1, 1926. It is not contended by their counsel that appellants reduced the invention to practice prior to the filing of their patent application—March 23, 1928. It is contended, however, that they were diligent in reducing the invention to practice at the time appellees Davidson and Ostromislensky entered the field, and thereafter until March 23, 1928, when their application for patent was filed.

The tribunals of the Patent Office concurred in holding that the evidence submitted by appellants Walsh and Caprio was insufficient to establish conception of the invention prior to their filing date. We deem it unnecessary to consider that question, because, even if it be assumed that appellants conceived the invention and disclosed it to others sometime during the period from January 15, to July 1, 1926, the evidence is insufficient to establish that they were diligent in reducing it to practice at and immediately prior to the time (January 3, 1928) appellee Ostromislensky filed his application.

The testimony of appellants Walsh and Caprio upon which the claim of diligence is based relates solely to the preparation and filing of their involved application.

Mr. Walsh testified that after the work in 1926 on the involved invention had ceased, and after the Celluloid Corporation by which he was employed had merged with the Celanese Corporation (which occurred in the summer of 1927), he consulted an attorney, Mr. Levinson (who has appeared as counsel for appellants throughout these proceedings) "outlined the applications [presumably patent applications] and left them with him [Mr. Levinson] for drawing up for filing."

Mr. Caprio stated that in September, 1927 it was concluded that patent protection should be sought and that Messrs. Seltzer and Levinson, patent attorneys, were requested to "draw up the necessary patent application."

Mr. Levinson did not testify in the case, and the testimony of the witnesses Walsh and Caprio is wholly uncorroborated.

Appellants Walsh and Caprio's application was not filed until March 23, 1928, approximately two and one-half months after Ostromislensky's application was filed. We must hold, therefore, that appellants have failed to establish diligence during the critical period. Accordingly, assuming for the purpose of this decision that appellants were the first to conceive the invention, they were not diligent in reducing it to practice at and immediately prior to the time appellee Ostromislensky entered the field, and, therefore, are not entitled to an award of priority.

In appeal No. 4031, appellant Davidson contends that the evidence submitted on his behalf establishes that he conceived the invention in the fall of 1925 or early part of 1926; that he actually reduced it to practice sometime during the summer or fall of 1926; and that the work of reducing the invention to practice was carried out at the Mellon Institute by the witnesses Dr. Ernest W. Reid and Mr. Donald C. Lewis, and one Dr. Hermann Heckel, who did not testify.

Appellant Davidson testified that a partially polymerized vinyl compound (vinyl acetate) was interposed between the surfaces of two pieces of glass, the "sandwich" thus formed subjected to pressure, and then baked to further polymerize the vinyl compound. He also testified that tests were made "of vinyl acetate acting as a bond between the glass and an inserted sheet of another material such as pyroxylin."

In describing the tests carried out by him at the suggestion of appellant Davidson, the witness Dr. Reid testified that sometime in the fall of 1926 "partially

polymerized vinyl acetate was placed on one side of two pieces of glass, this resin baked in an oven, and pieces united while hot, under pressure," and that the baking of the resin caused further polymerization of the vinyl acetate. He further stated that "The dry vinyl acetate resin was dissolved in acetone and this solution used to coat one side of two pieces of glass. These were air dried, then baked in an oven, at temperatures of approximately 80 to 90 deg. C. The two pieces placed together while hot, the resin side together, placed in a small press, and pressed while cooling." The witness further testified that "Sandwiches of glass and celluloid were prepared by using vinyl acetate as the adhesive," and that they were produced in the following manner: "A thin film of resin was placed on the glass and baked and the celluloid placed between the two pieces of glass and pressed while still hot."

The witness Donald C. Lewis testified that he "was an assistant on the Organic Synthesis Fellowship, sponsored by the Carbide and Carbon Chemicals Corporation," and that, in the summer and fall of 1926, he assisted the witness Reid in performing experiments in which glass articles were united by means of vinyl acetate. We quote from his testimony relative to those experiments:

"A. These experiments consisted of applying a film of vinyl acetate resin to a glass surface. The coated pieces of glass were then heated in an oven; the resin surfaces on the two pieces of glass were then brought in contact, and the composite placed under pressure in a small laboratory press.

"Q12. What part did you take in the conduct of the experiment you have just described? A. I coated the samples of glass, placed them in the oven, and later pressed them together in the press."

With regard to the experiments in which celluloid was used, the witness testified as follows:

"Q24. Do you know whether more than one experiment on this method of uniting materials, such as glass, was conducted at the time of which you speak? A. Yes.

"Q25. Were all of them conducted exactly as you have previously outlined? A. In general, yes.

"Q26. What differences, if any, characterized the other experiments that you have mentioned from the one you have described? A. Other experiments were made in an attempt to increase the break strength of the composite by the use of an inner layer of transparent celluloid.

"Q27. Do you recall how the composites which included a layer of transparent celluloid were formed? A. By placing sheet of transparent celluloid between the two resin surfaces on the glass."

It will be observed that, although appellant Davidson testified that his experiments or those made on his behalf were carried out in the order of the steps set forth in the involved counts, that is, by interposing a layer of vinyl acetate, or partially polymerized vinyl acetate, between the surfaces of glass or other articles, subjecting the composite article so formed to pressure, and polymerizing or further polymerizing the vinyl compound in situ, the witnesses Reid and Lewis not only did not corroborate his testimony, but contradicted it, stating that after a film of vinyl acetate was applied to the surfaces of two pieces of glass, the coated pieces of glass were heated in an oven, and, after removal from the oven, the coated surfaces were brought into contact with each other, and the article thus formed subjected to pressure.

It may be that, in the Reid and Lewis experiments, polymerization of the vinyl compound continued after the pieces of glass with the coated surfaces were removed from the oven and the coated surfaces brought into contact with each other and while the article so formed was permitted to cool under pressure. However, the processes carried out in those experiments do not conform to either of the processes defined in the counts in issue. Counts 1 and 3 clearly require, first, interposing a vinyl compound between the surfaces of articles (count 3 being limited to glass), second, subjecting the composite articles so formed to pressure, and, third, polymerizing the vinyl compound in situ; that is, the vinyl compound is polymerized after, not before, the composite article, of which it is a part, is formed. Count 2 requires, first, interposing a partially polymerized vinyl compound between the surfaces of articles, second, subjecting the composite article so formed to pressure, and, third, further polymerizing said vinyl compound in situ; that is, the partially polymerized vinyl compound is further polymerized after, not before, the composite article, of which it is a part, is formed.

Whether the processes carried out by appellant's witnesses Reid and Lewis dif-

fer in a patentable sense from the processes defined in the involved counts is a matter with which we are not here concerned. It is clear, however, that the testimony of those witnesses does not corroborate the testimony of appellant that he conceived the invention defined by the appealed counts in the fall of 1925 or early part of 1926, and reduced it to practice during the summer or fall of 1926.

There is no evidence of activity on the part of appellant Davidson, subsequent to the experiments carried out on his behalf by the witnesses Reid and Lewis in the summer and fall of 1926, until after appellee Ostromislensky filed his application—January 3, 1928. Accordingly, appellant Davidson is not entitled to an award of priority.

For the reasons stated, the decision of the Board of Appeals, awarding priority of invention to appellee Ostromislensky, is affirmed.

## Appeal No. 4030

Interference No. 63,781 is between appellees Walsh and Caprio's patent No. 1,-835,619, issued December 8, 1931 on an application filed March 23, 1928, and appellant Davidson's application, serial No. 593,-696, filed February 17, 1932, which is a division of application No. 296,106, filed July 28, 1928, and which matured into patent No. 1,929,352, October 3, 1933. Appellees Walsh and Caprio's patent and appellant Davidson's application were involved in interference No. 65,251, appeals Nos. 4028 and 4031.

Appellees are the senior parties and the burden was upon appellant to establish priority of invention by a preponderance of the evidence.

The counts, seven in number, originated in appellees' patent, where they appear as claims 2, 4, 6, 7, 8, 9, and 11. They read:

"Count 1. Method in accordance with count 1 wherein the vinyl compound is a vinyl acetate.

"Count 2. Method in accordance with count 3 wherein the vinyl compound is a vinyl acetate.

"Count 3. Method in accordance with count 5 wherein the vinyl compound is a vinyl acetate.

"Count 4. Method in accordance with count 5 wherein the polymerization is effected by the action of light.

"Count 5. Method of making laminated glass comprising securing a sheet containing a derivative of cellulose between sheets of glass by applying a layer of a material containing a vinyl compound between said cellulose derivative and said sheets of glass, subjecting the same to pressure and polymerizing said vinyl compounds in situ.

"Count 6. Method in accordance with count 5 wherein the cellulose derivative is an organic derivative of cellulose.

"Count 7. Method in accordance with count 5 wherein the vinyl compound is vinyl acetate."

Counts 1, 2, and 3 of the companion interference, No. 65,251, correspond to claims 1, 3, and 5 of the Walsh and Caprio patent. Accordingly, count 1, referred to in count 1 of the instant interference, is claim 1 of the patent and count 1 of the companion interference; count 3, referred to in count 2 of the instant interference, is claim 3 of the patent and count 2 of the companion interference; and count 5, referred to in counts 3, 4, 6, and 7 of the instant interference, is claim 5 of the patent and count 3 of the companion interference.

For the purpose of clarity, we deem it advisable to again set forth the counts of the companion interference, hereinbefore considered. They read:

"Count 1. Method of uniting articles comprising applying a layer of material containing a vinyl compound between the surfaces thereof, subjecting the same to pressure and polymerizing said vinyl compound in situ.

"Count 2. Method of uniting articles comprising applying a layer of a material containing a partially polymerized vinyl compound between the surfaces thereof, subjecting the same to pressure and further polymerizing said vinyl compound in situ.

"Count 3. Method of uniting articles of glass comprising applying a layer of a material containing a vinyl compound between the surfaces thereof, subjecting the same to pressure and polymerizing said vinyl compound in situ."

It will be observed that, whereas counts 1, 2, and 3 of the companion interference call for a "vinyl compound," counts 1, 2, 3, and 7 of the instant interference call for "vinyl acetate," one of the vinyl compounds. Count 4 of the instant interference and count 3 of the companion inter-

ference are similar, except that count 4 specifies that "polymerization is effected by the action of light." Count 6 of the instant interference and count 3 of the companion interference are similar, except that count 6 calls for the use of an organic derivative of cellulose.

The evidence submitted by the parties in the instant interference was made a part of the record in the companion interference, and, so far as it is applicable to the issues in the instant interference, is set forth, except as to count 4, in our decision in the companion interference.

 In view of the fact that, so far as the issues here are concerned, counts 1, 2, 3, and 7 in the instant interference differ from counts 1, 2, and 3 of the companion interference only in that they specify the use of vinyl acetate, one of the vinyl compounds, whereas the counts in the companion interference call broadly for vinyl compounds, what was said in the companion interference relative to appellant Davidson's conception and reduction to practice applies to counts 1, 2, 3, and 7 of the instant interference, and need not be repeated here. It is sufficient to say that appellant has failed to establish either conception or reduction to practice of the invention defined in those counts prior to the filing of appellees' application—March 23, 1928. Accordingly, appellant was the last to conceive the invention and the last to reduce it to practice, and, therefore, is not entitled to an award of priority.

As to counts 5 and 6, we deem it advisable, for the purpose of clarity, to again review the testimony of appellant's witnesses Reid and Lewis, which, it is claimed by counsel for appellant, corroborates the testimony of appellant, who stated in substance that vinyl acetate was interposed between the surfaces of two pieces of glass and a sheet of pyroxylin, the vinyl acetate acting as a bond between the glass and the pyroxylin, the sandwich thus formed subjected to pressure, and the vinyl acetate polymerized in situ by the application of heat.

The witness Reid testified that the vinyl acetate was placed on "one side of two pieces of glass," the glass subjected to heat, celluloid placed between the pieces of glass, and the article thus formed subjected to pressure while hot. Specifically, he stated that "a thin film of resin was placed on the glass and baked and the celluloid placed between the two pieces of glass and pressed while still hot."

The witness Lewis testified that the experiments in which celluloid was used were carried out in the same manner as those in which it was not used; that is, vinyl acetate was applied to the surfaces of two pieces of glass, the glass heated in an oven, removed, the celluloid placed between the coated surfaces, and the article thus formed subjected to pressure.

The experiments related by the witnesses Reid and Lewis were carried out in the summer and fall of 1926.

The testimony of those witnesses does not corroborate, but rather contradicts, the testimony of appellant Davidson that the experiments performed in 1926 were carried out in the order of the steps of the method defined in counts 5 and 6.

 For the reasons stated in the companion interference, we must hold that appellant has failed to establish either conception or reduction to practice of the invention defined in counts 5 and 6 in 1926, and, as there is no evidence of activity by him or on his behalf at and immediately prior to the filing of appellees' application (March 23, 1928), he is not entitled to an award of priority as to those counts.

Appellant's right to make count 6 is challenged by counsel for appellees. However, in view of our holding that appellant is not entitled to an award of priority of the invention defined in that count, we deem it unnecessary to consider his right to make it.

Count 4 requires that "polymerization" be "effected by the action of light." The other appealed counts are not so limited.

Appellant testified that the process defined in that count had been carried out in the experiments at the laboratory at the Mellon Institute. The witness Reid, who assisted in carrying out those experiments, testified that ultra-violet light had been used rather extensively in his experiments during the year 1926 "to further carry out polymerization." However, he did not state at what stage of the process carried out by him the vinyl acetate was exposed to ultra-violet light. We must presume, therefore, that when he used ultra-violet light the experiments were carried out in the same manner, and in the same order of steps, as when heat was used "to further carry out polymerization"; that is, that vinyl acetate was placed on the surfaces of two pieces

of glass, the vinyl acetate polymerized by ultra-violet light, the coated surfaces of the glass then brought into contact, and the article so formed subjected to pressure. Certainly, we can not presume, in view of his testimony as to the manner in which all of his other experiments were carried out, that, in this one instance, the witness Reid changed his method of procedure entirely and carried out his experiments in accordance with the method defined in the appealed count.

The witness Lewis did not testify that ultra-violet light was used for "further polymerization" of the vinyl acetate.

It is evident, we think, that the testimony of the witness Reid is not corroborative of the testimony of appellant that the process defined in count 4 was carried out in the experiments performed in 1926.

There being no evidence of activity on the part of appellant Davidson at and immediately prior to the filing of appellees' application (March 23, 1928), he is not entitled to an award of priority of the invention defined in count 4.

For the reasons stated, the decision of the Board of Appeals is affirmed.