**PRUTTON et al. v. MARZALL, Commissioner of Patents.**

No. 10704.

United States Court of Appeals
District of Columbia Circuit.

Argued March 16, 1951.

Decided June 21, 1951.

Oscar C. Limbach, of the Bar of the Supreme Court of Ohio, pro hac vice, by special leave of Court, Cleveland, Ohio, with whom Almon S. Nelson, Washington, D. C., was on the brief, for appellants.

Joseph Schimmel, United States Patent Office, Washington, D. C., with whom E. L. Reynolds, Solicitor, United States Patent Office, Washington, D. C., was on the brief, for appellee.

Before PRETTYMAN, BAZELON and WASHINGTON, Circuit Judges.

WASHINGTON, Circuit Judge.

This is a suit under R.S. 4915, 35 U.S.C. A. § 63, in which a patent is sought for a lubricating composition.[1] From a judgment of the United States District Court for the District of Columbia dismissing the complaint, plaintiffs (appellants) take this appeal.

Appellants' basic claim is stated as follows:

"Claim 8: A lubricating composition comprising a major amount of a hydrocarbon lubricating oil and the combination of (a) a detergent and (b) a sulphur-containing inhibitor in such an amount and with the sulphur in such form that more than 0.01% of sulphur, based on the weight of the lubricating composition, will react with copper at 250° C. and less than 0.001% at 100° C."

The remaining claims in suit relate chiefly to the composition of the detergent and of the sulphur-containing inhibitor.[2] It appears that detergents are used in engine oils and similar lubricants in order to keep the bearings and other working parts free from deposits caused by the breaking down of the lubricant under conditions of use. It also appears that sulphur is used as an ingredient of the lubricant in order to bring about the formation of a sulfide film on the working parts; this has the effect of protecting the bearing surfaces from corrosion as well as providing a degree of protection

1. Carl F. Prutton, the original applicant, and the Lubrizol Corporation, assignee of Prutton's entire right, title and interest in the application, brought suit against the Commissioner of Patents to obtain a patent upon certain claims set forth in the application of Prutton, Serial No. 416,743, filed in the Patent Office on October 27, 1941.

2. The inhibitors described in the claims and specifications include numerous compounds not containing sulphur. The discussion here will be confined to the sulphur group, which has been treated by the parties as representative and controlling.

against injury to the working parts in operation. There would also appear to be a facilitation of the friction-preventing process.

The essential point which appellants urge is that their formula provides a definition of the amount of sulphur to be added and specifies the narrow range of that amount. Their brief says, in this respect:

"The use of detergents broadly in lubricants is not new nor is the use of sulphur or sulphur compounds new. The Appellants' composition is believed to be novel and not anticipated by the prior art in two respects:

"First, no one prior to the Appellant Prutton ever taught the use of a lubricant which contains sulphur in the character and amount specified; and

"Second, no one prior to the Appellant Prutton ever proposed the combined use with such *character* and *amount* of sulphur, of a material which functions as a detergent."

The District Court in its findings of fact listed a number of patents as disclosing significant aspects of the prior art,[3] and concluded: "13. It would not require invention in view of the disclosures of each of [the patents to] Rutherford et al., Shoemaker et al. or Salzberg, to replace the corrosion inhibitor of Morway or Wilson by a sulfur containing inhibitor of the kind defined in the claims here involved."

The issues presented are thus quite similar to those involved in Asseff v. Kingsland, 85 U.S.App.D.C. 367, 178 F.2d 710, and in Asseff v. Marzall, 88 U.S.App.D.C. 358, 189 F.2d 660. Much of the background of the art is disclosed in the opinions rendered in those cases.

In considering the present case, it appears desirable first to review certain of the earlier patents in the field—those to Morway, Salzberg and Shoemaker.[4] The Morway patent disclosed the combination of a detergent with sulphur compounds in a lubricating composition, adding that "Corrosive sulphur is preferred to the non-corrosive types and the word 'corrosive' is used in a special sense to describe that type of compound, including free sulphur, which is capable of discoloring a bright copper strip when applied according to the method ordinarily used for testing gasoline and described by the American Society for Testing Materials." (Pat. No. 2,109,779, p. 1, col. 2, li. 28–36.) Salzberg disclosed the use in lubricants of new esters of the thio (sulphur) acids of phosphorus, stating, in part, that "the sulphur content of our compounds renders them more effective for many technical applications than the corresponding phosphates containing no sulphur; for example, when employed as * * * inhibitors. Furthermore, our compounds are more desirable as assistants for use in extreme pressure lubricants * * *." (Pat. No. 2,063,629, p. 3, col. 2, li. 60–68) The Shoemaker patent discloses that corrosion of hard metal alloys may be inhibited in refined lubricating oils by the use of sulphur in the form of alkyl or aryl thiophosphite, the recommended amount being up to 2% but preferably 0.05% to 0.75%. (Pat. No. 2,191,996, p. 1, col. 1, li. 38–45)

The three patents just discussed had all been applied for or actually granted by November 23, 1936, many months prior to the earliest date on which Dr. Prutton (the original applicant here) claims to have reduced to practice his present formula,[5] and long prior to the actual filing of his present application on October 27, 1941. These patents, taken together, clearly showed the usefulness in lubricant formulas of detergents and of sulphur-containing corrosion inhibi-

---

**3.** These references were:
  Salzberg 2,063,629 Dec. 8, 1936; Morway 2,109,779 March 1, 1938; Shoemaker 2,191,996 Feb. 27, 1940; Rutherford 2,252,984 Aug. 19, 1941; Asseff 2,261,047 Oct. 28, 1941; Mulit 2,274,302 Feb. 24, 1942; Wilson 2,280,419 April 21, 1942; McNab 2,285,795 July 14, 1942.

The dates given are those of issuance.

**4.** Described in footnote 3, *supra*. The applications were dated as follows: Morway, June 19, 1934; Salzberg, February 19, 1935; Shoemaker, November 23, 1936.

**5.** See footnote 11, *infra*.

tors.[6] Appellants must therefore urge some new factor. This they do by contending that their formula teaches the use of sulphur of prescribed character in prescribed amounts, on a controlled-activity basis.

The record shows that if the sulphur used as an inhibitor is in too active a form it will react with bearing surfaces at comparatively low temperatures—sometimes even while the machine is at rest. This produces undesirable results. Appellants specify that under their formula, at the temperature of boiling water (100° C.) less than 0.001% of sulphur, based on the total composition, will react with copper; at 250° C., however, more than 0.01% of sulphur will react with copper. High reactivity is thus obtained at high operating temperatures.

Appellants rely heavily on the "control" aspect of their formula, pointing out that some compounds contain sulphur in such an active form that reduction in its activity is required. But in his testimony Dr. Prutton stated that "you can usually treat those materials with either an alkaline material —caustic soda, lime, sodium sulfide—and in that way reduce the reactivity at the lower temperature, and take out from the compound that very active sulphur which might be present as an impurity, and which is not desired." He added that these methods are "quite well" known in the art.[7]

In essence, Dr. Prutton's teaching is that sulphur is a seasoning which must be used with care, and preferably in such form and amount as will produce the results desired—i. e., little or no reaction with a cold engine and substantial reaction with a hot engine. He prescribes that when a lubricating formula is made up it be tested and experimented with (according to stated methods) to make certain that it does in fact meet the stated standards of performance.

The description of these standards, and the formulation of these tests,[8] may be assumed to be a useful contribution to industrial knowledge. But that is not enough to entitle appellants at this stage to preempt the lubricating field to the extent and in the manner they seek. There is no showing that others in the field have not themselves been formulating their own standards of performance and making tests of their product against those standards. It is hardly to be contemplated that every time a user of the Morway patent (for example) reaches optimum performance under standards akin to those of appellants (i. e., no sulphur reaction with a cold machine, substantial reaction with a hot) he must be found to have infringed the appellants' claims. That would be to carve the heart and value out of the pre-existing knowledge and work in the field. In fact, Morway did not contemplate that the use of sulphur would be uncontrolled. He gave a special definition of the sulphur to be used, and provided for activity tests. Only a portion of the sulphur used by Morway was to be in the so-called "corrosive" form. He gives special emphasis to the use of polysulfides, as well as sulphurized olefines and terpenes. (Pat. No. 2,109,779, p. 1, col. 2, li. 37 et seq.)

On consideration of the entire record we must conclude that the District Court was correct in finding that "It would not require invention in view of the disclosures of each of * * * Shoemaker et al. or Salzberg, to replace the corrosion inhibitor of Morway or Wilson by a sulfur containing inhibitor of the kind defined in the claims here involved." [9]

6. Morway, as has been indicated, expressly showed the usefulness of combining these two factors in the same lubricating composition. (Pat. No. 2,-109,779, p. 1, col. 1, li. 15–28; and *passim.*)

7. He went on to answer in the affirmative the following question: "But in going to the chemical storehouse and selecting any sulphur compound found there, you could treat it to bring it down to the desired degree of inactivity at 100, and then by subsequent test determine whether it was active enough at 250, and in that way very easily and quickly determine a vast variety of compounds useful in this invention, is that right?" (Jt.App. 49)

8. The tests described in the specifications are not alleged to be patentable in themselves. They appear, in fact, to be based on standard methods in the art.

9. The District Court's finding also included a reference to the Rutherford patent, described in footnote 3, supra. Rutherford, whose application was filed

In view of this conclusion, we must hold that the complaint was properly dismissed. See Asseff v. Kingsland, supra; Asseff v. Marzall, supra. Accordingly, we need not examine the other patents referred to by the District Court (Asseff, Mulit, McNab and Wilson [10]), or reach the other contentions of the parties.[11]

The judgment of the District Court will therefore be

Affirmed.

May 6, 1939, taught, among other things, the use of certain sulphur compounds (certain polyvalent metal salts of sulphur containing substituted acids of phosphorus) as corrosion inhibitors. However, as indicated by the disjunctive phrasing of the District Court's finding, the reference to Rutherford is not essential to the conclusion reached. Nor is it essential to our conclusion.

10. The Asseff, Mulit, McNab and Wilson patents, described in footnote 3, supra, were all issued subsequently to the Morway, Shoemaker, Rutherford and Salzberg patents, and teach the combined use of detergents with corrosion in-

hibitors. With regard to the Rutherford patent, see footnote 9, supra.

11. In consequence, we do not reach the question whether the District Court acted correctly in excluding certain evidence relative to reduction to practice offered by Dr. Prutton, on the ground that it had not been first presented to the Patent Office. See Barrett Co. v. Koppers Co., 3 Cir., 22 F.2d 395; Knutson v. Gallsworthy, 82 U.S.App.D.C. 304, 316, 164 F.2d 497, 509. We have considered that evidence, but regard it as immaterial since it does not claim a date prior to November 23, 1936. See text related to footnote 5, supra.