## BRODERSON v. MARZALL.

### No. 10631.

United States Court of Appeals
District of Columbia Circuit.

Argued Jan. 31, 1951.

Decided Nov. 23, 1951.

Harold T. Stowell, Washington, D. C., for appellant.

Clarence W. Moore, United States Patent Office, Washington, D. C., with whom E. L. Reynolds, Solicitor, United States Patent Office, Washington, D. C., was on the brief, for appellee.

T. Carl Nixon, Rochester, N. Y., filed a brief on behalf of the University of Rochester as *amicus curiae*, urging reversal.

Before CLARK, PRETTYMAN and WASHINGTON, Circuit Judges.

PRETTYMAN, Circuit Judge.

This is a patent case. The application was denied by the Patent Office. A complaint was filed in the District Court under Section 4915 of the Revised Statutes.[1] Trial was had, and the District Court rendered an opinion, made findings of fact, announced conclusions of law, and entered judgment dismissing the complaint. The applicant appealed.

The applicant claims a patent for a method of operating a four-stroke-cycle Otto internal combustion engine. The patent was denied, by both the Patent Office and the District Court, upon the ground that no invention was shown in view of the prior art. To permit review of that conclusion, the application must be placed in its proper setting in the art.

The basic operation of an internal combustion engine is, of course, the movement of a pistonhead up and down, or to and fro, in a hollow cylinder. The power which causes that movement is the combustion of a mixture of air and either gas or vaporized liquid. In an Otto-type engine this combustion is caused by an electric spark. In a so-called four-stroke-cycle engine each complete operation consists of four strokes of the pistonhead, twice down and twice up.

1. As amended, 35 U.S.C.A. § 63.

On the first downstroke air and fuel are sucked into the cylinder. On the upstroke this air and fuel are compressed. Thereupon a spark occurs which ignites the mixture, causes rapid expansion, and forces the pistonhead down in the cylinder. The next upstroke forces the burned fuel out of the cylinder. Thus the four strokes are called the suction or intake stroke, the compression stroke, the power stroke, and the exhaust stroke. The essential ingredients for the operation are air, fuel, and an electric spark. Many variations in the size and shape of the cylinder, the proportions of air and fuel, the timing of the injection of air and fuel, the timing of the spark, and the arrangement of the air and fuel injectors and of the spark plug, have been tried in order to achieve effective operation, efficient and economical use of·fuel, and the use of the lower grade hydrocarbons as fuels. Extensive research along these lines has been conducted almost continuously by many industries.

The problem with which industry has been faced in Otto engines is created by three simple physical facts. (1) Variation in the pressure in the cylinder at the moment of combustion, under different power demands, causes inefficient operation, knocking, etc. Therefore it is highly desirable that pressure be maintained within a narrow range under all conditions of operation. (2) The ignitable ratio of available fuels and air is in a very narrow range. The optimum for gasoline is fifteen of air to one of fuel. A mixture too rich or too lean will not ignite. (3) Different load demands require different amounts of fuel for efficiency. Idling requires little fuel; starting motion on a heavy load demand requires much fuel. Put together these facts mean that when the power demand is light a little fuel is needed, but a little fuel necessitates a correspondingly small amount of air, and a lessened amount of air results in a light compression in the cylinder. In common parlance, when you throttle the gas you must also throttle the air and this causes inefficiency or trouble. The industry has sought the answer for years.

This applicant's idea is to have two mixtures of air and fuel in the engine at the same time, instead of merely one mixture. He would keep one mixture at a ratio of air and fuel always readily ignitable. The other mixture he would keep always at the same pressure but varied in fuel content from very lean to very rich depending on power demands. To accomplish this two-mixture purpose, the applicant uses two chambers, one in the cylinder above the pistonhead at top dead center and the other in an offset or auxiliary chamber. To maintain constant pressure he injects the same amount of air into the chambers under all load conditions. He injects the fuel into the auxiliary chamber and varies the amount of fuel according to power demand. Then, in order to keep the mixture in the auxiliary chamber at an ignitable ratio under all conditions, he times the fuel injection so that, although under full power demand large amounts of fuel are sucked into the cylinder prior to combustion, under light power demand the fuel is confined to the auxiliary chamber and only air is in the cylinder itself. Thus he achieves a constant compression in the cylinder and a constantly ignitable mixture of fuel and air in the auxiliary chamber. He has two mixtures, one for one purpose and the other for another purpose. Both mixtures are in the engine at the same time, both are homogeneous, but they are separated, "stratified". The advantages of the method are claimed to be the more economical use of fuel, the possible use of low-grade fuel, and the absence of detonation or knocking.

The application relates to the method of operation. That method requires certain features in the design of the cylinder, chiefly a space in the cylinder above the pistonhead at top dead center and an auxiliary combustion chamber, separated from the cylinder by a somewhat restricted passageway, with an air intake valve, fuel injector, and spark plug all located in this auxiliary chamber. Separately considered these are all commonplaces of design. Adequate combustion space in the cylinder above the pistonhead at top dead center is a common feature of internal combustion engines. An auxiliary combustion chamber is a well-known device, being usual in a Diesel operation and known in an Otto operation,

140

as is indicated by Mock's application, discussed infra. Neither does the application add any novel features to the customary valves, fuel injector, and spark plug, and it adds no new ingredients to the customary air and fuel.

But the application for patent is not directed at features of design. The application claims a *method of operation,* of which the following are the principal features: (1) the admission of constant charges of air to the combustion space, which space includes both the cylinder and the auxiliary chamber; (2) a supply of fuel varied in relation to the power demand; and (3) the timing of the fuel injection so that under full load demands about half of the fuel is injected during the intake stroke of the piston and the other half during the compression stroke, and so that under minimum load demand (idling) all the fuel is injected during the compression stroke.

The inventiveness claimed is in the idea of two simultaneous homogeneous mixtures of fuel and air; of constant pressure in the cylinder and a mixture of ignitable proportions always at the spark plug, although the fuel is varied according to power demand; and of the arrangement and combination of known features of design and standard elements of operation to achieve these new and novel results.

The prior art upon which the Patent Office and the District Court relied was exemplified, both the Commissioner and the court said, by three patents, one to F. C. Mock, issued January 3, 1939, one to Oscar Werner, issued February 1, 1927, and the third a British patent, "Complete Accepted" May 17, 1932. The application for the Mock patent was directed principally to the elimination of detonation and its accompanying disadvantages. The claim of invention was for a combustion chamber of heart-shaped form offset from the cylinder, in which chamber the fuel injector and two spark plugs were so arranged as that the combustion took the form of a spherical wave front of flame which moved toward the passageway from this chamber to the cylinder. The spherical wave front in the heart-shaped chamber was claimed to eliminate the possibility of knocking. The Werner

patent was for a fuel pump. The object was to provide a retort, in which an ignition by electric spark occurred, and thereafter fuel was admitted to the cylinder of the engine and this fuel was burned as a result of the heat created in the retort. The British patent related to a Diesel operation, which involved an antechamber in which a portion of the fuel and air mixture was ignited before the combustion process took place in the cylinder.

It seems clear enough to us that none of the three patents mentioned approached, as patents, the method claimed by the present appellant. There was expert testimony of the highest order in the present case, which pointed out that fact. For example, it was pointed out that the Mock patent did not contemplate any considerable combustion space in the cylinder at the moment when the pistonhead was at top dead center, and did not contemplate any homogeneous mixture, much less two such mixtures, of fuel and air prior to ignition. Nor could Mock maintain uniform compression by admitting constant charges of air at all power demands; if, while reducing fuel input proportionately to power demand variations, he admitted constant quantities of air at all power demands, the resulting mixture at low power demand would be so lean that even his double spark could not ignite it. The Werner patent contemplated the direct injection of fuel upon the hot face of the pistonhead and the burning of that fuel as in a Diesel operation. Werner did not have in the cylinder a mixture of air and fuel which was variable according to power demands. Moreover, approximately the same amount of fuel was injected at low power demand as at high power demand. The British patent was strictly a Diesel operation. As such, although pressure was maintained, it used, as did Werner, approximately the same quantity of fuel at lower power demand as it did at high power demand.

But the problem before us is not whether the patents issued in the prior art involved a definable feature of the present application. The problem is whether the revelations in the prior applications and otherwise in the art were such that the present

application did not involve the "flash of genius" which is requisite to inventiveness for patent purposes.

We have examined with care the three patent applications cited to us as reflecting the prior art, and we are unable to find that they contain any hint of the idea and method for which the present applicant claims inventiveness. The notion of two homogeneous mixtures in an engine simultaneously was wholly foreign to the teachings of Mock; it had no relation to Werner's direct injection of fuel or to any revelation we can find in the British patent application.

This court has long hesitated to overrule the findings of the Patent Office and the District Court on a question of inventiveness. We hesitate to do so now. In fact, in Abbott v. Coe,[2] we pointed sharply to the rule that we will not disturb the findings of the Patent Office upon a question of inventiveness if those findings are, in our view, reasonable upon the record. Nevertheless, when our view of the record has required it, we have reversed. Thus we did so in Poulsen v. Coe,[3] two of the three judges who sat in Abbott v. Coe participating, and likewise in Levin v. Coe,[4] again two of the three judges who sat in Abbott v. Coe participating.

In the present case it seems clear to us that the Board of Appeals in the Patent Office totally ignored (at least it failed to mention) the inventive feature of this applicant's claim as he described it and claimed it. The Board referred separately to the several elements of the design of the cylinder useful for operation of the claimed method, and referred separately to the several steps in engine operation. But it nowhere referred to the essence of appellant's concept, the two simultaneous homogeneous mixtures of fuel and air so designed and achieved as to accomplish separately two results. The Board said that Mock disclosed a main combustion chamber and an auxiliary chamber. Mock did not have two combustion chambers, a main one and an auxiliary one. The heart-shaped combus-

tion space in his design is the one combustion chamber. His claim was for "a combustion chamber of heart-shaped form offset from said cylinder." As a matter of fact, Mock disclosed no space, except clearance space, in the cylinder when the pistonhead is at top dead center. And the idea of having a combustible mixture in the cylinder simultaneously with the ignitable mixture in the auxiliary chamber was not only absent from Mock but is contradictory of Mock's concept. Mock specifically pointed out that for his invention the requirement as to the injection of fuel is "that the fuel must not enter too greatly into the piston displacement chamber." He emphasized that "the combustion chamber relatively remote from the engine cylinder and the manner in which fuel is injected therein" was of the essence of his idea. Mock's concept, as disclosed by his application, was that if combustion occurred in a chamber separated from the cylinder and shaped so that there were no corners or pockets in it, and the fuel was injected so that a very rich mixture was near the spark plugs, the flame would advance in a spherical front, encountering "a relatively non-homogeneous mixture of fuel vapor and air prior to reaching the engine cylinder," so that there would be no detonation, "knocking". The absence of pockets in the combustion space, which in his invention was wholly in the heart-shaped chamber apart from the cylinder, was his fundamental idea. There was not the slightest hint in Mock, so far as we can ascertain, of the idea which is the gist of the present invention. The Board said that the admission of constant charges of air was revealed in Mock. We cannot find it mentioned. There is no evidence in this record that Mock's invention has ever been used, although his patent was granted January 3, 1939, twelve years ago. We suppose that the restricted opening between the chamber in which the total combustion occurs in his engine and the cylinder where the pistonhead is, prevented the delivery to the pistonhead of any considerable portion of the power generated by the combustion; and that this restriction pre-

2. 1939, 71 App.D.C. 195, 109 F.2d 449.

3. 1941, 73 App.D.C. 324, 119 F.2d 188

4. 1942, 76 U.S.App.D.C. 347, 132 F.2d 589.

vented efficient use of fuel. The present application appears to have no such infirmity. In this application the principal combustion occurs in the cylinder itself, directly upon the pistonhead, when full power is demanded. It is only when minimum power, or none at all, is demanded that combustion is confined principally to the auxiliary chamber.

The Board found the present application anticipated by Werner, reciting severally the features which constitute the basic elements of design and operation. But there was not the slightest hint in Werner of the invention claimed here or of any idea which, so far as we can see, would lead to the present invention. Werner's claims were for a fuel pump. His operation was not an Otto operation but was a Diesel operation with a retort attached in which an Otto operation created the heat necessary to ignite for burning the fuel in the cylinder. Werner's idea seems to have been that, instead of relying upon compression heat to ignite fuel injected directly into the cylinder, the requisite heat can be created in a separate retort, and that by having two fuel injectors, one in the cylinder and one in the retort, efficient variations in fuel consumption according to power demands could be accomplished. Nothing relating to mixtures, and most particularly nothing relating to two mixtures, of fuel and air for Otto operation was suggested, so far as we can see.

The Board merely referred to the British patent without discussing it.

Thus it seems to us that the Patent Office confined itself to pointing out that the elements used by the present applicant are old. There is no dispute about that, as we understand the contentions. The Board did not point out wherein the combination of those elements in the manner and with the results claimed by this applicant was remotely suggested by anything in the prior art. It did not show or attempt to show that anything in the prior art revealed the idea that by a certain combination of design, timing and control two homogeneous mixtures of fuel and air could be produced simultaneously in an Otto engine so that constant pressure could be maintained at all loads while at the same time consistently ignitable mixtures could also be maintained at all loads.

As this court pointed out in Levin v. Coe, supra, it is settled that the fact that all of the elements entering into a combination are old does not necessarily negative the existence of invention. So the possibility of invention in the case before us is not blocked by the fact that the elements used are not new. We think that, by merely pointing out that the several elements were old, not indicating in even the slightest respect wherein the new and novel combination here claimed was revealed or indicated to such an extent as to make it producible by the use of mere skill in the art, the Patent Office did not lay a supportable basis for rejection of this patent.

The District Court in its opinion and findings merely followed the Patent Office.

■■■■ Assuming that the three patents cited represent the revelations of the prior art,[5] we are of opinion that the concept of the present applicant and the method devised for its accomplishment represent that inventiveness above and beyond mere skill in the art, that "flash of genius", which requires issuance of a patent.

Claims 1 to 6 in the present application are limited to the inventiveness which we have described. As thus read they should be approved and patent should issue on them. Claims 7, 8 and 9 go beyond that feature and are too broad. They should not be allowed. Judgment will be entered accordingly.

Reversed and remanded for further proceedings in accordance with this opinion.

5. Several other patents were mentioned before the Examiner, but both the Board and the District Court treated the three we have discussed as reflecting the full of the prior art. Both parties followed the same course in this court. We see no reason for us to attempt, under those circumstances, to ascertain *sua sponte* whether that evaluation of the three patents was accurate upon comparison with other patents not relied upon here.

WASHINGTON, Circuit Judge (dissenting).

I regret the necessity of dissenting in this case. The right of an inventor to a patent was a subject of express constitutional concern, Article I, § 8, and has long been safeguarded by congressional legislation. In our own day, the obtaining of an important patent is one of the few remaining ways in which an individual can by intellectual and scientific endeavor obtain substantial monetary rewards. The encouragement of inventive activity is a function not only of the Patent Office but of the courts; neither should be reluctant to recognize a real contribution to science and the arts. But the contribution must possess distinct and substantial originality.

In experimenting with internal combustion engines, Broderson was working in a highly developed field. The specific objectives which he sought to achieve—elimination of knock and operation at constant pressure over wide power demands—have been the goals of many inventors. Broderson admittedly employs known elements of design and operation. It seems evident that he could not obtain a design patent, nor has he asked for one. He is seeking a method patent. But if a design patent is not obtainable, the grant of a method patent having the practical effect of establishing a monopoly over the design would certainly be unwarranted. Further experimentation should not be thus inhibited. And the Supreme Court has recently pointed out the caution which the courts must observe in ascribing patentability to an assembly of previously known elements. Great A. & P. Tea Co. v. Supermarket Equipment Corp., 340 U.S. 147, 71 S.Ct. 127, 95 L.Ed. 162.

The prior art cited by the Patent Office, as embodied in some thirteen patents,[1] indicates the number and variety of devices which have been used by Broderson's predecessors. Only three of these patents—Mock, Werner, and the British Patent No. 373, 647—were specifically relied on by the Board of Appeals and the District Court in rejecting the application, and only those three were urged upon us in appellee's brief. These are the prior patents discussed by the majority of the court. All thirteen, however, were reviewed by the Patent Office examiner, cited by the Board of Appeals and presented to the District Court and this court. They form a part of the record on which the application must be considered. I do not agree with the majority's restricted characterization of the teachings of the three mentioned patents. But even if that characterization were correct, that should not be the end of the matter. We ought not, after considering only these three patents, authorize issuance of a patent which could not be sustained on the basis of the additional references.[2] To do so would be both wasteful and contrary to the public interest. The patent so granted would not withstand a subsequent challenge, and in the meantime might well hinder further development. The present litigation is one in which the public has an interest; we cannot judge it as if it were a private battle

1. These are as follows:

| Yost, et al. | 1,096,585 | May 12, 1914 |
|---|---|---|
| Power | 1,235,725 | Aug. 7, 1917 |
| Werner | 1,616,157 | Feb. 1, 1927 |
| Hesselman | 1,835,490 | Dec. 8, 1931 |
| Wild, et al. | 2,005,063 | June 18, 1935 |
| Starr | 2,025,362 | Dec. 24, 1935 |
| Bremser | 2,061,826 | Nov. 24, 1936 |
| Mock | 2,142,280 | Jan. 3, 1939 |
| Dillstrom | 2,145,250 | Jan. 31, 1939 |
| Chapman | 2,204,068 | June 11, 1940 |
| British Patent | 195,609 | Jan. 31, 1924 |
| British Patent | 373,647 | May 17, 1932 |
| Swiss Patent | 208,611 | May 16, 1940 |

2. The necessary implication of the Supreme Court's ruling in Hill v. Wooster, 132 U.S. 693, 10 S.Ct. 228, 33 L.Ed. 502, is that the District Court must not authorize issuance of a patent after overturning a Patent Office ruling unless it finds affirmatively that the claims are in fact patentable; further, in determining patentability, the court must consider any material brought to its attention whether or not the Patent Office's decision was based thereon. Cf. Knutsen v. Gallsworthy, 82 U.S.App.D.C. 304, 306–308, 313–314, 164 F.2d 497, 499–501, 506–507. And this court has on occasion gone to the length of consulting material entirely outside the record in order to inform itself regarding the prior art. See Radtke Patents Corp. v. Coe, 74 App.D.C. 251, 270, 122 F.2d 937, 956, certiorari denied 314 U.S. 695, 62 S.Ct. 410, 86 L.Ed. 556.

between the applicant and the Commissioner.

The inventiveness claimed for Broderson's idea is, in the words of the majority, "two simultaneous homogeneous mixtures of fuel and air;[3] * * * constant pressure in the cylinder and a mixture of ignitable proportions always at the spark plug, although the fuel is varied according to power demand; and * * * the arrangement and combination of known features of design and standard elements of operation to achieve these new and novel results." Most of these aspects of the method are concededly well-known.[4] The only real question is whether Broderson's means for assuring that there will always be an ignitable mixture adjacent to the spark, while the richness of the mixture at other points in the combustion space is varied with power demand, constitutes a patentable invention.

The idea of securing a rich mixture at the point of ignition and a leaner mixture elsewhere is revealed in at least three prior patents.[5] While it is true that these earlier devices do not make use of two chambers,

that element of design is old in the art.[6] The fact that Broderson segregates the rich mixture largely in one chamber while supplying a variable mixture to the other does not, I think, provide a sufficient element of novelty to warrant a patent. Suppose that Broderson had used two fuel injectors, one in each of his combustion chambers, to secure the mixture distribution which he claims to have achieved by the use of only one injector. He would have "two simultaneous homogeneous mixtures," but this would hardly constitute invention in view of the common prior use of multiple injectors and chambers to obtain whatever fuel apportionment happened to be desired.[7] His application is not saved by having only one injector and by accomplishing apportionment by means of the timing of the fuel injection plus the flow of air between the chambers. Variations in injection timing and use of air flow or turbulence to achieve a desired type of fuel-air mixture distribution are both well known to the art.[8] Broderson has shown skill and imagination in his use of known methods in order to achieve the effect he desires.

3. Broderson himself claims a "controlled stratification of the fuel." Claim 1 of his application is typical, and reads as follows: "1. The method of operating a four-cycle internal combustion engine which comprises *admitting constant charges of air to the combustion space* of the engine *including a main combustion chamber and an auxiliary combustion chamber* communicating with the main combustion chamber through a restricted passage and having a volume not substantially exceeding the volume of the main combustion chamber at top center position of the piston, *compressing the air* within the combustion chambers, *supplying* to the combustion chambers *controlled charges of fuel* varied in amount in relation to the power demand upon the engine, *injecting* into the auxiliary combustion chamber during the compression stroke of the piston *controlled portions of said charges of fuel* varied in amount in predetermined relation to the total quantity of fuel supplied *to effect a controlled stratification of the fuel* between the auxiliary combustion chamber and the main combustion chamber *and to provide* in the auxiliary combustion chamber at the time of ignition *an ignitable fuel mixture under*

*all conditions* of power demand irrespective of variation in composition of the fuel-air mixture obtained in the main combustion chamber, and igniting the mixture under compression in the auxiliary combustion chamber." (Emphasis added.)

4. It is not strenuously urged that the use of constant air pressure constitutes invention, nor can it be in view of the earlier patents embodying this feature. E.g., Starr, Bremser, Mock. In Bremser and Mock, the feature of constant air intake is not express, but each patent uses an air intake valve apparently without a throttling mechanism. Bremser, like Starr, provides for concentration of fuel density at the spark plug to assure ignition. See Bremser application, p. 1, col. 1, li. 27–30, and claims 6 and 19.

   Variation of fuel with power demand, of course, is a principle on which the usual Otto-type engine operates.

5. Starr, Bremser, Mock.

6. See Chapman, Weber; cf. Werner.

7. *Ibid*; and cf. British Patent No. 195,-609.

8. Mock, Bremser, Chapman, Starr, Hesselman.

Ingenuity is not, however, a substitute for invention.

For these reasons, I have not been convinced either that the Patent Office misunderstood and undervalued Broderson's contribution [9] or that he himself has claimed it in a form which sufficiently distinguishes it from the prior art. To me the reasonable basis for the Patent Office's rejection of Broderson's application is clear. The finding of such a basis, of course, is all this court can be concerned with; if it exists, we cannot order the issuance of a patent.[10] From the nature of Broderson's application and the field with which he is concerned, and from the finding against him by the Patent Office, there has devolved upon appellant an onerous burden. In my view he has failed to sustain it.

---

9. I do not think controlling the Board of Appeals' failure to mention expressly what the majority considers as the "essence" of the claimed invention, especially in view of the patent examiner's explicit treatment of the point. App. 156–157, 160–161.

10. See Besser v. Ooms, 81 U.S.App.D.C. 7, 154 F.2d 17; Standard Oil Development Co. v. Marzall, 86 U.S.App.D.C. 210, 181 F.2d 280.